**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | **CASE NO. 15–30786** |
| **CALMENA ENERGY SERVICES INC.,** | § | **Jointly Administered** |
| *et al.,*[1] | § | |
| | § | **Chapter 15** |
| Debtors in a foreign proceeding. | § | |

**RECEIVER'S EXPEDITED MOTION FOR ORDER**
**APPROVING SALE OF SUBSTANTIALLY ALL ASSETS FREE AND**
**CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS**
**AND GRANTING COMITY TO ORDER OF THE CANADIAN COURT**

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED.  IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING. REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

**PLEASE TAKE NOTICE THAT** A HEARING HAS BEEN SET ON THIS MOTION FOR APPROVAL OF SALE OF SUBSTANTIALLY ALL ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTEREST **FOR TUESDAY, JUNE 2, 2015 AT 2:00 P.M.** IN THE UNITED STATES COURTHOUSE, 515 RUSK, COURTROOM 403, HOUSTON, TEXAS 77002.

Now comes Ernst & Young Inc., as the court-appointed receiver (the "**Receiver**") based

upon the Receivership Order dated January 20, 2015, evented by the Court of Queen's Bench of

---

[1]     The Debtors are Calmena Energy Services Inc.; Calmena Energy Services (USA) Corp.; Calmena Drilling Services LLC; and Calmena Drilling Services US LP.

Alberta in the Judicial Centre of Calgary, Canada (the "**Canadian Proceeding**"), and authorized foreign representative of the above-captioned Debtors to file this *Receiver's Expedited Motion for Order Approving Sale of Substantially All Assets Free and Clear of Liens, Claims, Encumbrances, and Interests and Granting Comity to Order of the Canadian Court* (the "**Motion**"), and states:

## I.
## JURISDICTION, VENUE, AND CORE ALLEGATIONS

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334(a) and (b) and 11 U.S.C. § 1501 of the Bankruptcy Code.  Venue is proper in this district pursuant to 28 U.S.C. § 1410.  This is a core proceeding. 28 U.S.C. § 157(b)(2)(A)(B) & (O).

## II.
## PRELIMINARY STATEMENT

2.      The Debtors are part of a group of Canadian-based companies that have been placed into a receivership proceeding under the Bankruptcy and Insolvency Act in Canada, and the Receiver is the Canadian court-appointed receiver.  The Court has recognized the Canadian Proceeding as a foreign main proceeding and accorded relief under 11 U.S.C. §§ 1520, 1521, and 105(a).  15-30786 Dkt. No. 17.  Following a rigorous sales and marketing process conducted by the Receiver, the Debtors are now seeking to sell all of the operating assets owned by the Debtors free and clear of liens.  The Receiver has reached agreements to complete the Proposed Transactions (defined below), which the Receiver submits represented the highest and best offers received.  The Receiver has filed an application with the Canadian Court to approve the Proposed Transactions, which is currently set to be heard by the Canadian Court on May 20, 2015.  By the time the hearing on this Motion is held, the Receiver expects the Canadian Court will have approved of the Proposed Transactions.  This Motion seeks the approval by this Court of the sale of the Debtors' assets located in the United States.

35229363.5

**III.**
**EXPEDITED RELIEF REQUESTED**

3.     The Receiver filed the *Receiver's Motion for Approval of Claims Process for United States Creditors* (Dkt. No. 24, the "**Claims Process Motion**") to establish a process by which claims of U.S. creditors may be submitted for review.  The Claims Process Motion is set for hearing on June 2, 2015, at 2:00 PM CDT.  The Receiver requests expedited consideration of this Motion so that the Court may consider the Claims Process Motion simultaneously.

4.     Further, the Receiver submits that expedient consideration and approval of the Proposed Transactions is necessary to preserve the value secured as a result of the Receiver's sales and marketing process.  In particular, the Debtors require expedited consideration of this Motion because certain of the assets to be sold are stored on property in Conroe, Texas, leased by one of the Debtors.  That lease has expired by its own terms, and the Receiver was able to negotiate a short lease extension.  However, the landlord has indicated that the assets must be removed from the property by June 15, 2015, and the Purchasers (defined below) require approximately ten days to remove the Purchased Assets.

**IV.**
**BACKGROUND**

5.     This Court has previously recognized the Canadian Proceeding as a foreign main proceeding and recognized the Receiver as the foreign representative in these Chapter 15 cases. *Order Granting Receiver's Petition for Recognition as Foreign Main Proceeding Pursuant to Sections 1515 and 1517 of the United States Bankruptcy Code and Related Relief*, Dkt. No. 17 (the "**Recognition Order**").[1]   Three of the Debtors in these jointly administered chapter 15

---

[1] For further background on the Debtors' prepetition operations, see *Receiver's Petition for Recognition as Foreign Main Proceeding Pursuant to Sections 1515 and 1517 of the United States Bankruptcy Code and Related Relief*,

bankruptcy cases, namely, Calmena Energy Services (USA) Corp. ("**CES USA Corp.**"), Calmena Drilling Services LLC ("**Drilling LLC**") and Calmena Drilling Services US LP ("**Calmena US LP**"), are U.S. companies that operated in the United States; the fourth Debtor is the ultimate parent of the other Debtors, Calmena Energy Services, Inc., a Canadian corporation formed under Alberta law (collectively, the "**Debtors**").

6.     The Receiver, based on his control of and authority over the Debtors, has undertaken the liquidation of the assets of all of the Calmena entities, including the assets located in the United States owned by the Debtors, pursuant to the authority granted in the Canadian Proceeding and the Recognition Order.  On or about March 11, 2015, the Receiver began an extensive sales and solicitation process ("**SISP**") to market the Calmena Entities' directional drilling equipment (the "**Equipment**") located in Oklahoma City, OK and Conroe, TX.  The Equipment is comprised of directional drilling motors and associated parts (the "**Motor Assets**") and the measurement-while-drilling systems and associated parts (the "**MWD Assets**").  The Equipment is owned by either Calmena US LP, Drilling LLC, Calmena Energy Services, Inc., or Calmena Luxembourg Holdings S.a.r.l. ("**Calmena Luxembourg**").[1]

7.     Pursuant to the SSIP, the Receiver marketed the Equipment, placing advertisements in three industry publications and directly contacting a total of 77 parties, including both strategic buyers and investment groups.  The Receiver also put out requests for proposals to seven auctioneers (in both Canda and the U.S.) to conduct an auction of the

---

Dkt. No. 2, ¶¶ 6–29 (the "**Petition for Recognition**").  All capitalized terms not otherwise defined in the Motion will have the same meaning defined in the Petition for Recognition.

[1] As indicated, Calmena Luxembourg, a non-debtor entity, owns some of the Purchased Assets (defined below).  By this Motion, the Receiver is seeking approval under 11 U.S.C. § 363(b) of the Proposed Transactions (defined below) pursuant to which the Purchased Assets owned by both the Debtors and Calmena Luxembourg will be sold. But, for the avoidance of doubt, the Receiver notes that it seeks this Court's approval to sell free and clear of liens, claims, encumbrances, and other interests pursuant to 11 U.S.C. § 363(f) only those Purchased Assets located in the United States owned by the Debtors.

Equipment – no Auctioneers submitted RFPs on the terms requested by the Receiver.  The Receiver arranged 20 site tours in Texas and Oklahoma and gave 13 interested parties access to an online data room to facilitate due diligence.  A total of twelve bids were submitted for all or a portion of the Equipment by the bidding deadline of April 22, 2015.  A more complete description of the marketing efforts of the Receiver on behalf of the Debtors is contained in the First Report of Ernst & Young, Inc., in its Capacity as Court Appointed Receiver (the "**Receiver's Report**") filed in the Canadian Proceeding and attached hereto as **Exhibit 1.**

8.      After reviewing the bids received, the Receiver selected the highest and best bids for the Equipment and proceeded to negotiate with the bidders on behalf of the Debtors with respect to a purchase and sale agreement.  Such negotiations were at arms' length and in good faith.  As a result of such negotiations, the Receiver reached the proposed sales transactions now being put forth by the Receiver for approval by this Court and the Canadian Court.

9.      The first proposed transaction for the sale of the Equipment is with 1616057 Alberta Ltd., a Canadian corporation formed under Alberta law ("**161 Alberta**").  161 Alberta has contracted to purchase the Debtors' MWD Assets located in Oklahoma and Alberta for the price of CAD $835,000 (approximately USD $694,720).[1]  A true and correct copy of the Asset Purchase Agreement dated May 14, 2015 by and between Calmena US LP, Drilling LLC, Calmena Luxembourg, and 161 Alberta (the "**161 APA**") is attached to the Motion as Appendix D to Exhibit 1.  The transaction with 161 Alberta pursuant to the 161 APA is set to close no later than June 10, 2015.

10.     The second proposed transaction for certain other equipment owned is with Turbo Drill Industries, Inc., a Texas corporation ("**Turbo Drill**," together with 161 Alberta, the

---

[1] The exchange rate as of the filing of this Motion is CAD $1 = USD $.832.

"**Purchasers**").   Turbo Drill has contracted to purchase the Debtors' Motor Assets located in Texas and Oklahoma for CAD $800,000 (approximately USD $665,600).   A true and correct copy of the Asset Purchase Agreement dated May 14, 2015 by and between Calmena US LP, Drilling LLC, Calmena Energy Services, Inc., and Turbo Drill (the "**Turbo Drill APA**," together with the 161 APA, the "**Proposed Transactions**") is attached to the Motion as Appendix E to Exhibit 1.   The transaction with Turbo Drill pursuant to the Turbo Drill APA is set to close no later than June 10, 2015.

11.     The assets to be purchased pursuant to the Proposed Transactions, as further defined in the 161 APA and the Turbo Drill APA, are hereafter referred to as the "**Purchased Assets**," constitute all of the operating assets of the Debtors located in the United States and are proposed to be sold free and clear of any and all liens, claims, encumbrances and interests (other than as expressly set forth in the Proposed Transactions).[1]

12.     On May 14, 2015, the Receiver filed an Application with the Canadian Court seeking, among other things, approval of the Canadian Court for the Proposed Transactions (the "**Canadian Sale Application**") and proposed order vesting the Purchased Assets in the respective Purchasers' respective names (the "**Canadian Sale Orders**").   A true and correct copy of the Canadian Sale Application is attached to the Motion as **Exhibit 2**.   True and correct copies of the proposed Canadian Sale Orders are attached to the Motion as Schedule B and Schedule C to Exhibit 2.   Concurrently with filing the Canadian Sale Application, the Receiver filed its report attached hereto as Exhibit 1, advising the Canadian Court of the SSIP results and recommending approval of the Proposed Transactions.

---

[1] The 161 APA also provides for the purchase and sale of some of the Debtors' assets located in Alberta, Canada. For clarity, the Receiver is requesting relief from this Court related solely to the Debtors' assets located in the U.S.

13.     The hearing on the sale is set before the Canadian Court on May 20, 2015 (the "**Canadian Sale Hearing**").  It is anticipated that the Canadian Court will approve the Proposed Transactions at the Canadian Sale Hearing.  Upon entry of the Canadian Sale Orders, the Receiver will supplement this Motion.

14.     The Receiver submits that the Proposed Transactions are in the best interests of the Debtors, the U.S. creditors, and the other U.S. stakeholders.  The Proposed Transactions represent the highest and best offers received after the Receiver's rigorous marketing and sale effort on the Debtor's behalf.  The Proposed Transactions are not conditioned upon further due diligence or other contingencies, absent approval by the Canadian Court and this Court.  The Purchasers have demonstrated a capacity to close the Proposed Transactions upon obtaining the necessary approvals of the Canadian Court and this Court.

15.     The proceeds generated by the Proposed Transactions do not exceed the total of the claims of the two secured creditors, HSBC Bank Canada and Alpine Capital Corp.  Thus, the Receiver does not anticipate a recovery for unsecured creditors.  But the Receiver anticipates that the various taxing authorities and agencies in the U.S. jurisdictions within which the Debtors operated and in which the Purchased Assets are located will assert statutory lien claims for certain taxes alleged to be owed on the Purchased Assets located in the United States sold as part of the Proposed Transactions (the "**Tax Claims**").  Until the Tax Claims have been filed and reviewed, and a determination made as to their allowance, the Receiver will be unable to distribute sales proceeds to claimants with allowed claims or to administer and close these cases. The Receiver has filed the Claims Process Motion to allow the Tax Claims to be submitted for review and requested consideration of the Motion at the same time as the Claims Process Motion is set for hearing on June 2, 2015 (the "**Sale Hearing**").

## V.
## RELIEF REQUESTED

16.     By this Motion and pursuant to 11 U.S.C. § 363(b), (f), and (m) and Federal Rule of Bankruptcy Procedure[1] 6004, the Receiver request that the Court enter an Order approving the Proposed Transactions and the sale of the Purchased Assets, which constitute all of the Debtors' operating assets located in the United States, free and clear of all liens, claims, encumbrances, and interests (other than as expressly set forth in the Proposed Transactions).  The Receiver also requests that the Court grant comity, recognize, and give full force and effect to the Canadian Court's approval of the Proposed Transactions.

## VI.
## BASIS FOR RELIEF REQUESTED

**A.      The Request Relief Satisfies the Requirements of 11 U.S.C. §§ 1520 and 363.**

17.     Pursuant to the Recognition Order, 11 U.S.C. § 363 applies to a transfer of the Debtors' interest in property that is within the territorial jurisdiction of the United States to the same extent that the section would apply to property of an estate.   Dkt. No. 17 ¶ 3(a). Accordingly, the Receiver submits that the Fifth Circuit standard for approving sales pursuant to § 363 should apply to the Proposed Transactions.

18.     Section 363(b)(1) of the Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(l).  Courts in the Fifth Circuit apply the "business judgment" test for an asset sale under § 363.  *ASARCO, L.L.C. v. Elliott Mgt. (In re ASARCO, L.L.C.)*, 650 F.3d 593, 601 (5th Cir. 2011).  Under this standard, the movant bears the burden to show that the proposed sale is "supported by an articulated business justification, good business judgment, or

---

[1] Hereinafter, "Rule" or "Rules," as appropriate.

sound business reasons." *Cadle Co. v. Mims (In re Moore)*, 608 F.3d 253, 263 (5th Cir. 2010). A court should consider "all salient factors" concerning approval of the proposed sale, including whether: (1) the price to be paid for the assets is fair; (2) the negotiations or bidding occurred at arm's length; (3) the procedures proposed are adequate, including proper exposure to the market and accurate and reasonable notice to all parties in interest; (4) any improper or bad motive exists; and (5) the assets are increasing or decreasing in value. *Institutional Creditors of Cont'l Air Lines, Inc. v. Cont'l Air Lines, Inc. (In re Cont'l Air Lines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986) (quoting *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983)).

19.     The Receiver submits that the Proposed Transactions satisfy the requirements of § 363(b).   The Receiver conducted a full, transparent sales process, including marketing the Purchased Assets to a wide range of industry participants and strategic and investment purchasers.   Ex. 1 (Receiver's Report) at 17-22.   The Receiver solicited bids during the marketing phase of the Sales Process, which were received and evaluated on April 22, 2015.   *Id.* The Receiver identified the highest and best offers for the Purchased Assets and proceeded to negotiate at arms' length with the bidders, resulting in the Proposed Transactions.   *Id.*   The Purchased Assets' values are likely decreasing, particularly given the recent instability of the commodities markets, as well as the potential negative effect on the Purchased Assets' market value if the Proposed Transactions do not close as expected.   *Id.*   Finally, in connection with this Motion and the approval sought in the Canadian Proceedings, the Receiver has provided accurate and reasonable notice to all parties in interest, including serving this Motion on the broader, initial service list rather than pursuant to the *Order Granting Receiver's Motion to Limit Notice* (Dkt. No. 9).   *Id.*   Accordingly, the Receiver avers that the Proposed Transactions are supported

by good business judgment and sound business reasons and should, therefore, be approved pursuant to 11 U.S.C. § 363(b).

20.     A trustee may also sell property under § 363(b) free and clear of any interest in such property of an entity other than the estate only if:

   (1)     applicable nonbankruptcy law permits sale of such property free and clear
           of such interest;

   (2)     such entity consents;

   (3)     such interest is a lien and the price at which such property is to be sold is
           greater than the aggregate value of all liens on such property;

   (4)     such interest is in bona fide dispute; or

   (5)     such entity could be compelled, in a legal or equitable proceeding, to
           accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

21.     The Receiver submits that subsections (1), (2), and (5) of § 363(f) apply, as will be proved at the Sale Hearing.  The Debtors' senior secured lender, HSBC Bank Canada, has consented to the sale of its collateral.  15-30786 Dkt. 9-1.  The sales proceeds will not exceed the claims of the HSBC Bank Canada, thus, it does not appear that there will be a recovery from the proceeds of the anticipated sale of the Purchased Assets for the junior secured lender or the unsecured creditors.  Accordingly, consistent with applicable nonbankruptcy law, the Receiver may sell the Debtors' assets located in the United States free and clear of any liens, claims, encumbrances, and interests subordinated to the senior secured creditor.  Any allowed Tax Claims will be satisfied from the sales proceeds either without reliance on § 363(f) or in compliance with subsection (5).  Accordingly, the Purchased Assets owned by the Debtors and located in the United States can be sold free and clear of liens, interests, encumbrances, and claims pursuant to 11 U.S.C. § 363(f).

35229363.5

22.     Approval of the Proposed Transactions has been requested in the Canadian Court and will promote the objectives and principles provided in chapter 15 of the Code, including 11 U.S.C. § 1501.  The relief requested in this Motion is part and parcel with the type contemplated by chapter 15, specifically by § 1520(a)(3) and § 1521(a)(5).  The Proposed Transactions should, therefore, be approved and the proposed order filed contemporaneously with this Motion should be entered by the Court.

23.     The Receiver believes Purchasers are purchasing the Purchased Assets in good faith, and that Purchasers constitute good faith buyers within the meaning of 11 U.S.C. § 363(m). The Court's order approving the sale should, therefore, hold that Purchasers are entitled to the full protections of § 363(m) and have proceeded in good faith in all respects in connection with this proceeding.

24.     Moreover, the purchase prices were not controlled by any agreement among potential bidders at such sale, and neither the Receiver, the Debtors, nor the Purchasers engaged in collusion or any other conduct that would cause or permit the Proposed Transactions to be avoidable under 11 U.S.C. § 363(n).  The Court's order approving the sale should, therefore, hold that the Proposed Transactions may not be avoided and that no party shall be entitled to damages or other recovery pursuant to 11 U.S.C. § 363(n).

25.     The Receiver asserts that any laws regarding bulk sales, or similar laws, are not applicable to the sales of the Purchased Assets.  In addition, the Receiver believes that because the assignment, transfer, or sale of the Purchased Assets: (i) is in exchange for the purchase prices paid by the Purchasers, no withholding of U.S. federal income tax pursuant to sections 1441 or 1442 of the Internal Revenue Code is required, and (ii)  as the sale of the entire operating assets of the Debtors' business located in Texas, constitutes an occasional sale, it is exempt from

Texas sales and use tax pursuant to Texas Comptroller's Sales Tax Rule 34, Tex. Admin. Code § 3.316, and Texas Tax Code § 151.304.  The Court's order approving the sale should, therefore, include holdings confirming these points.

**B.      This Court Should Grant Comity to the Canadian Sale Orders.**

26.     This Court has found that that the Canadian Proceedings are foreign main proceedings.  Upon recognition of a foreign proceeding under 11 U.S.C. § 1517, a U.S. court must grant comity or cooperation to the foreign representative.  *Id.* § 1509(b)(3).  This requirement is subject to any limitations that the court may impose consistent with the policy of chapter 15.  *Id.* §§ 1509(b); 1506.  Consistent with § 1501, the court shall cooperate to the maximum extent possible with a foreign court or a foreign representative, either directly or through the trustee.  *Id.* § 1525(a).  Accordingly, the Receiver seeks comity and cooperation of this Court with respect to the Canadian Court and its Vesting Order.

27.     A central tenet of chapter 15 is the importance of comity in cross-border insolvency proceedings.  *Ad Hoc Grp. of Vitro Noteholders v. Vitro SAB De CV (In re Vitro SAB De CV)*, 701 F.3d 1031, 1053 (5th Cir. 2012).  The Supreme Court defined comity over a century ago as follows:

> "Comity," in the legal sense, is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other.  But it is the recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protection of its laws.

*Hilton v. Guyot*, 159 U.S. 113, 143 (1895); *see also Vitro*, 701 F.3d at 1043–44.

28.     The exceptions to comity are construed especially narrowly when the foreign jurisdiction is like Canada, a sister common law jurisdiction with procedures akin to those in the United States.  *Clarkson Co. v. Shaheen*, 544 F.2d 624, 630 (2d Cir. 1976) (holding that not

recognizing the Canadian judgment at issue would contravene the public policy of New York); *In re Petition of Davis*, 191 B.R. 577, 587 (Bankr. S.D.N.Y. 1996) ("Courts in the United States uniformly grant comity to Canadian proceedings . . . consistent with the treatment accorded by federal courts to foreign proceedings in 'sister common law jurisdictions.'").

29.   The extension of comity to Canadian orders has continued since the 2005 enactment of Chapter 15.   *Raymond Chabot, Inc. v. Serge Côté Family Trust*, No. 6:14-cv-03392, 2014 U.S. Dist. LEXIS 117128, at *6 (D.S.C. Aug. 22, 2014) (entering temporary restraining order assisting Canadian bankruptcy receiver and noting "the widely-accepted view that Canadian judgments are entitled to recognition and enforcement here"); *Collins v. Oilsands Quest, Inc.*, 484 B.R. 593, 597 (S.D.N.Y. 2012) (holding that comity required deference to the procedures set forth in the Canadian insolvency proceeding and enforcement of the stay granted by the Canadian court and not a redetermination of whether a stay should have issued at all); *In re Metcalfe & Mansfield*, 421 B.R. 685, 698–99 (Bankr. S.D.N.Y. 2010) (extending comity to Canadian CCAA order providing for a third party release and citing numerous cases where American courts have extended comity to Canadian judgments).

30.   Considering this authority, granting comity to the Canadian Sale Orders is consistent with the regular practice of U.S. courts and this Court's authority under 11 U.S.C. §§ 1509 and 105(a).   Accordingly, the Receiver requests that this Court grant comity to the Canadian Sale Orders, thereby giving full force and effect to the Canadian Court's approval of the sale of substantially all of the Debtors' assets.

## VII.
## DISPOSITION OF PROCEEDS AND JUDGMENT

31.   Pursuant to the proposed order filed herewith, all liens, claims, encumbrances, and interests (except those expressly set forth in the Proposed Transactions as assertable against

the Purchasers or the Purchased Assets) against the Debtors or the Purchased Assets will attach to the proceeds of the sale received by the Receiver on the Debtors' behalf.  The net proceeds shall stand in the place and stead of the Purchased Assets, and that from and after delivery of the Receiver's Certificate under the Canadian Sale Orders, all claims, liens, encumbrances, and interests shall attach to the net proceeds with the same priority as with respect to the Purchased Assets immediately prior to the sale, as if the Purchased Assets had not been sold and remained in the possession or control of the person having that possession or control immediately prior to the sale. The Receiver also requests that the Court confirm when entering an order approving this Motion that such order constitutes a final and appealable order and judgment.

## VIII.
## RELIEF FROM ANY STAY

32.     Pursuant to Rules 6004(h), 7062, and 9014, unless the Court orders otherwise, the proposed sale order may be automatically stayed.  As described above, time is clearly of the essence in connection with the sale process and consummation of the Proposed Transactions, which must be completed by June 10, 2015 and the assets located in Conroe, Texas, must be removed from the premises by June 15, 2015.  The Receiver asserts that failure to close the Proposed Transactions by this date will harm the value of the Debtors' assets, potentially resulting a sale for less than the highest and best offers and result in additional charges from any holdover under the Conroe, Texas, lease.  Therefore, to maximize the value received for the assets and minimize accruing liabilities, the Receiver seeks to consummate the sale of the assets to the Purchasers expediently.  Accordingly, the Receiver requests that the Court waive any applicable stay period, whether under Rules 6004(h), 7062, or 9014, or otherwise.

## IX.
## <u>PRAYER</u>

WHEREFORE, the Receiver respectfully requests that the Court enter an order granting the relief requested herein, and grant all other relief, at law or in equity, to which the Receiver is justly entitled.

Dated:  May 15, 2015

Respectfully submitted,

**NORTON ROSE FULBRIGHT US LLP**

By:  ___*/s/ R. Andrew Black*___
    R. Andrew Black (TX 02375110)
    andrew.black@nortonrosefulbright.com
    1301 McKinney, Suite 5100
    Houston, TX 77010-3095
    Telephone:  (713) 651-5364
    Facsimile:   (713) 651-5246

Louis R. Strubeck, Jr. (TX 19425600)
Timothy S. Springer (TX 24088460)
louis.strubeck@nortonrosefulbright.com
tim.springer@nortonrosefulbright.com
2200 Ross Avenue, Suite 2800
Dallas, TX  75201
Telephone:  (214) 855-8000
Facsimile:   (214) 855-8200

**COUNSEL FOR CANADIAN RECEIVER**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing *Receiver's Expedited Motion for Order Approving Sale of Substantially All Assets Free and Clear of Liens, Claims, Encumbrances, and Interests and Granting Comity to Order of the Canadian Court* has been served upon the persons entitled to notice on May 15, 2015 by either U.S. first class mail, postage prepaid or by electronic notification. On May 15, 2015, counsel directed UpShot Services, LLC, to serve a copy of the foregoing Motion on approximately 150 parties in interest.  The Receiver will supplement this certificate of service with a copy of such service list and affidavit of service.

    */s/ Timothy S. Springer*

35229363.5